# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| RICHARD KURLAND<br>10 Spring Forest Court<br>Owings Mills, Maryland  21117 | *<br><br>* |
| and | * |
| MARTI KURLAND<br>10 Spring Forest Court<br>Owings Mills, Maryland  21117 | *<br><br>* |
| Plaintiffs, | * |
| v. | * |
| ACE AMERICAN INSURANCE COMPANY<br>P.O. Box 41484, TL14F<br>Philadelphia, Pennsylvania  19101 | *<br><br>* |
| SERVE ON:<br>    Maryland Insurance Administration<br>    200 Saint Paul Place, Suite 2700<br>    Baltimore, Maryland  21202 | *<br><br>*<br><br>* |
| and | |
| BANKERS STANDARD INSURANCE COMPANY<br>P.O. Box 41484, TL14F<br>Philadelphia, Pennsylvania  19101 | *<br><br>*<br><br>* |
| SERVE ON:<br>    Maryland Insurance Administration<br>    200 Saint Paul Place, Suite 2700<br>    Baltimore, Maryland  21202 | *<br><br>*<br><br>* |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*        \*   \*   \*   \*   \*

# COMPLAINT

Plaintiffs Richard and Marti Kurland ("the Kurlands"), by their undersigned counsel, hereby sue Defendants ACE American Insurance Company and Bankers Standard Insurance Company (collectively, "Defendants") for breach of contract and for damages:

## NATURE OF THE ACTION

1. This is a Complaint for breach of a contract of insurance covering the Plaintiffs' residence. The Kurlands' home is the insured premises under an insurance policy issued by the Defendants. The Kurlands' residence sustained heavy water and mold damage, endangering the health of their children and forcing the family to vacate the house. The Defendants have wrongfully denied the Kurlands' claim for complete coverage of the extensive property damage to the residence and its contents.

## THE PARTIES

2. Plaintiffs are the insured policyholders and are Maryland residents.

3. Defendant ACE American Insurance Company ("ACE"), the writer of the policy at issue, is a Pennsylvania corporation with its principal place of business located at P.O. Box 41484, TL14F, Philadelphia, Pennsylvania 19101.

4. Defendant Bankers Standard Insurance Company ("Bankers Standard"), the issuer of the policy at issue, is a Pennsylvania corporation, with its principal place of business located at P.O. Box 41484, TL14F, Philadelphia, Pennsylvania 19101. Bankers Standard is an ACE Group Company.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between the Kurlands, who are citizens of Maryland, and the Defendants, who are citizens of Pennsylvania, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that the dispute arises out of a loss in Baltimore County, Maryland and all or a substantial part of the events or omissions giving rise to this claim occurred within the District of Maryland.

## FACTUAL ALLEGATIONS

7.     ACE, through Bankers Standard, issued to the Kurlands a Platinum Portfolio of homeowner's insurance policies (Nos. 268-06-12-15H, 268-06-12-15U, 268-06-12-15V; collectively, the "Policy") covering the Kurlands' residence located at 10 Spring Forest Court, Owings Mills, Baltimore County, Maryland (the "Residence").  The Policy was effective from June 1, 2014 to June 1, 2015, and insures the Kurlands' Residence up to a limit of $1,500,000.00, as well as their personal property up to a limit of $1,050,000.00.  Under the Policy, covered losses are settled on a replacement cost basis.

8.     The Kurlands have sustained significant losses, to both their Residence and their personal property, that are covered by the Policy.  The Policy states:

> Losses We Cover.  We cover risk of direct physical loss to property described in Part I of this policy, subject to Losses We Do Not Cover.

*See* Ex. A, Policy at 14. As such, the Policy is an "all-risk" policy, and covers all perils unless explicitly excluded.

9. The Kurlands purchased the Residence in December of 2011, and lived there with their two minor children. In 2015, the Kurlands discovered water leaking and condensing from the HVAC system, damaging the exterior and interior of the Residence. The faulty HVAC system caused water to accumulate in the ceilings, walls, and ducts in the basement, pantry hallway, office hallway, office, and attic. The Residence also sustained direct physical loss to structural elements such as the roof and beams as a result of water damage. In addition, the defective HVAC system was sucking insulation into the units and blowing fiberglass throughout the home, creating a hazardous environment for all inside.

10. After identifying the HVAC system defects, the Kurlands also discovered that water was leaking in other areas of the Residence, from sources other than the HVAC system. In particular, the roof, windows, and pool deck sustained additional water damage. The Kurlands repaired these areas of water damage at their own expense. Nevertheless, the basement walls became soaked, causing further water damage, which in turn caused other ensuing losses.

11. The water damage also caused mold to ensue. For example, the HVAC units were filled with black mold, and black mold grew on the water-damaged basement walls. Other visible and non-visible mold existed in other areas of the Residence. According to tests conducted in late March of 2015 by EMSL Analytical, Inc., an independent laboratory, the mold levels in the Kurlands' home indicate "High Relative

Moldiness." *See* Ex. B, EMSL Report at 1.  The Kurlands were then advised to leave the home.  Acting immediately on that advice, the Kurlands permanently vacated the Residence on April 22, 2015.

12.     The all-risk Policy contains various exclusions as well as specific Endorsements and "Extra Benefits."  Pursuant to these provisions, the losses to the Kurlands' Residence and personal property are covered under the Policy.

13.     Water from the HVAC system has extensively damaged the Residence, including but not limited to the interior, exterior, structural elements, fixtures, equipment, and personal property.  The Residence requires significant repair and rebuilding as a direct result of this water damage.  Although the Policy contains an exclusion for certain types of water damage resulting from natural causes, the Policy does not exclude loss caused by water damage from a faulty HVAC system.  *See* Policy at 14-15.  Accordingly, because water damage caused by the HVAC system is not excluded, the losses sustained to the Kurlands' Residence are covered up to $1,500,000.00.

14.     In addition, the Policy includes an "Equipment Breakdown" Endorsement, which provides an additional $500,000.00 in coverage.  *See* Policy, Equipment Breakdown Coverage at 1.  This Endorsement covers "[a]ll mechanical breakdown," and damage "[c]aused by, resulting from, or consisting of . . . [m]echanical breakdown . . . or [r]upture, bursting, bulging, implosion, or steam explosion." *Id.*  Thus, the faulty HVAC units, which caused the water and mold damage to the Residence and personal property, as well as contaminated the air in the Residence by sucking insulation into the unit and blowing fiberglass through the vents, are themselves covered under the Policy.  Through

an exception to an exclusion, the Policy covers the water piping in the HVAC system. *Id.* Moreover, the ductwork has sustained extensive damage that is covered under the Policy because the damage was caused by the mechanical breakdown of the HVAC units. And, the loss of personal property was also caused by equipment breakdown. Defendants therefore have a duty to pay for the replacement or repair of the HVAC system, and the damage caused by the breakdown of the HVAC system.

15. The Policy provides another Extra Benefit for "Rebuilding to Code." Under that provision, the Defendants represent that:

> We will pay for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates the construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a covered loss.

*See* Policy at 8. Because of the covered damage, the Residence is in violation of applicable laws and ordinances. In its current condition, the Residence is not clean, safe, or sanitary because of the extensive water damage, as well as the mold that ensued. Accordingly, Defendants have a duty to pay for the additional cost of repairing the Residence to a condition that complies with the applicable law.

16. The Policy further provides coverage for loss of use of the Residence:

> If a covered loss damages part of the residence premises making it not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

*See* Policy at 6. As a result of the water and mold damage, the Residence was not fit to live in. The Kurlands were forced to move to a rental apartment, and subsequently to a hotel, incurring significant covered additional living expenses. The Defendants have a

duty to pay for these covered additional living expenses until the Residence is repaired or until the Kurlands permanently relocate. *Id.*

17. As a result of the water and mold damage, and the breakdown of HVAC equipment, the Kurlands' personal property has been extensively damaged by water, and in some cases, ensuing mold. As to some items, it is possible to clean them at great effort and expense. In other instances, however, items either cannot be cleaned, or the cost of cleaning exceeds the costs of buying a replacement. Using even the most economical approach, the Kurlands have sustained covered personal property losses to the contents of the Residence in excess of the jurisdictional amount.

18. The Kurlands filed a timely claim for the loss, accepted by Defendants on April 17, 2015, and have complied with all duties of the insured pursuant to the Policy. *See* Policy at 17-18.

19. In response, Defendants proposed a patently inadequate offer. The Defendants inspected the Residence, and had a full opportunity to observe the extensive loss. However, on May 12, 2015, the Defendants issued a check to the Kurlands for only $24,830.90, for "water/mold damage," in purported settlement of all losses. *See* Ex. C. The Kurlands have not deposited or negotiated the check.

## COUNT I
## BREACH OF CONTRACT

20. The Kurlands re-allege and incorporate by reference the foregoing Paragraphs as if fully set forth herein.

21. Defendants have a contractual duty to pay the Kurlands for the full amount of the covered damages they have sustained, up to the limits of the Policy.

22. Defendants breached the contract by offering an amount that barely begins to compensate the Kurlands' for their covered losses.

23. As a result of Defendants' breach of contract, the Kurlands have suffered direct and consequential damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants for damages in excess of $75,000.00, in an amount to be determined at trial, plus costs of suit, reasonable attorneys' fees, expenses, pre- and post-judgment interest at the maximum rate as permitted by law, and any other relief as the Court deems just.

## **REQUEST FOR JURY TRIAL**

Plaintiffs request a jury trial on all issues triable to a jury.


Dated:  September 10, 2015               /s/ Brian S. Goodman
                                         Brian S. Goodman (Bar No. 03212)
                                         Justin A. Redd (Bar No. 18614)
                                         Kramon & Graham, P.A.
                                         One South Street
                                         Suite 2600
                                         Baltimore, Maryland  21202
                                         bgoodman@kg-law.com
                                         jredd@kg-law.com
                                         (410) 752-6030 Telephone
                                         (410) 539-1269 Facsimile

                                         Attorneys for Plaintiffs
                                         Richard and Marti Kurland

OF COUNSEL:

Michael W. Duffy, Esquire
CHILDRESS DUFFY LTD.
500 North Dearborn Street, Suite 1200
Chicago, Illinois  60654
Telephone:  (312) 494-0200
Facsimile:     (312) 494-0202
*mduffy@childresslawyers.com*