IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD KURLAND, ET AL.          :
                                 :
                                 :
v.                               :       Civil No. JKB-15-2668
                                 :
                                 :
ACE AMERICAN INSURANCE CO., ET AL. :
                                 :
                                 :

**MEMORANDUM**

Richard and Marti Kurland ("Plaintiffs") have sued ACE American Insurance Company ("ACE") and Bankers Standard Insurance Company ("Bankers Standard") ("Defendants"), alleging breach of contract. Now pending is Defendants' motion for summary judgment. The issues have been briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, the motion will be granted in part and denied in part.

**I. BACKGROUND**

Bankers Standard issued an insurance policy to Plaintiffs, effective from June 1, 2014, to June 1, 2015, that insured their residence and personal property at 10 Spring Forest Court in Owings Mills, Maryland. (ECF No. 29-3). The policy is an "all-risk" policy, meaning it covers all perils except those specifically excluded. (*Id.* at 26; ECF No. 1 at 4). Plaintiffs purchased the insured residence in 2011 and lived there with their two minor children. (ECF No. 32 at 2).

During the coverage period, Plaintiffs discovered the residence was sustaining water damage, partly due to a leaky roof. (ECF No. 1 at 4; ECF No. 35 at 6). This water damage also caused mold to grow, including inside the HVAC system. (ECF No. 1 at 4; ECF No. 29-1 at 3).

1

Plaintiffs' personal property was also damaged by water and mold. (ECF No. 32 at 3). After mold was detected inside the residence in March 2015, (ECF No. 1 at 4–5; ECF No. 1-2), Plaintiffs permanently vacated the residence on April 22, 2015, (ECF No. 32 at 3). They lived in an apartment complex and hotel room before permanently relocating. (*Id.*).

After receiving a claim from Plaintiffs pursuant to the insurance policy, Defendants inspected the residence on April 20, 2015. (ECF No. 32 at 4; ECF No. 35-1 at 1). On May 12, 2015, Defendants issued a check to Plaintiffs for $24,830.90, in purported settlement of all covered losses. (ECF No. 32 at 4; ECF No. 1-3). A document accompanying the check clarified that this overall amount was comprised of three smaller sub-payments of $12,830.90, $10,000, and $2,000, and that a $5,000 deductible had also been subtracted. It further clarified that each of these sub-payments was for "water/mold damage," but did not further elaborate. (ECF No. 1-3).

Believing that this payment did not reflect the full extent of their covered losses, Plaintiffs brought this action in federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (ECF No. 1 at 3). Defendants moved for summary judgment, (ECF No. 29), Plaintiffs responded, (ECF No. 32), and Defendants replied, (ECF No. 35).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the

motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).

### III. ANALYSIS

This motion for summary judgment raises two broad issues. First, Defendants claim summary judgment is appropriate with respect to ACE because ACE "was not a party to any contract of insurance with Plaintiffs." (ECF No. 29-1 at 8). They also claim summary judgment is appropriate because no breach of contract occurred. Each issue will be examined in turn.

#### a. Status of ACE as a Party to the Lawsuit

The first issue is whether ACE is a proper party. Defendants claim ACE is not a proper party – and summary judgment should thus be entered in its favor – because "the terms of the insurance Policy . . . do not identify ACE as a party to the contract of insurance." (ECF No. 29-1 at 9). The policy here was issued by Bankers Standard, not ACE, and thus ACE cannot be held liable for breaching a contract to which it was not a party, Defendants claim. (*Id.* at 8–9).

Plaintiffs concede that the policy lists Bankers Standard as the sole issuer but claim summary judgment is inappropriate because "the evidence is less than clear as to the relative

roles ACE and Bankers Standard play in the Policy, the dispute over coverage, and the payment of the claim." (ECF No. 32 at 6–7). For instance, they note that "ACE" is printed on "virtually every page" of the policy; the policy and accompanying endorsements are named the "ACE Platinum Portfolio"; the policy states that Bankers Standard is "an ACE Group Company"; and the check sent to Plaintiffs in purported settlement of their covered losses "appears to list 'ace group' [sic] as the payor, and also lists ACE Private Risk Services and Bankers Standard Insurance Company." Plaintiffs also claim the only other evidence regarding the relationship between ACE and Bankers Standard is an "ACE Group Privacy Statement" noting that the ACE Group of Companies use the name Bankers Standard Insurance Company. (*Id.*).

In Maryland, insurance policies are interpreted in the same manner as contracts. *See Collier v. MD–Individual Practice Ass'n*, 327 Md. 1, 5 (1992). Absent an indication the parties intended to use words in a special sense, policy terms are accorded their "usual, ordinary, and accepted meaning." *Bausch & Lomb, Inc. v. Utica Mutual Ins. Co.*, 330 Md. 758, 779 (1993). And "[c]lear and unambiguous language . . . must be enforced as written." *Catalina Enterprises, Inc. Pension Trust v. Hartford Fire Ins. Co.*, 67 F.3d 63, 65 (4th Cir. 1995) (citing *Board of Trustees of State Colleges v. Sherman*, 280 Md. 373, 380 (1977).

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). The general rule is that "a person cannot be held liable under a contract to which he was not a party," although "a person not originally a party to a contract may later accept or adopt it, and he will then be bound by it." *Snider Bros., Inc. v. Heft*, 271 Md. 409, 414 (1974); *accord Whiting-Turner Contracting Co. v. Liberty Mut.*

*Ins. Co.*, 912 F. Supp. 2d 321, 333 (D. Md. 2012). A non-party may become bound by a contract if that party's conduct is "sufficient to manifest acceptance of the terms of a written contract." *Porter v. General Boiler Casing Co., Inc.*, 284 Md. 402, 411 (1979).

Here, the plain language of the contract lists Bankers Standard as the sole issuer of the policy. (*See* ECF No. 29-3 at 2, 3, 6, 8, 12). Plaintiffs' claim that ACE may still be bound by the contract, this plain language notwithstanding, is meritless. For instance, the fact that "ACE" appears in a header at the top of many policy pages does not mean ACE issued the policy. *See Whiting-Turner*, 912 F. Supp. 2d at 326–27 (suggesting Liberty Mutual was not a party – even though its logo appeared on the policy form – because the policy listed Liberty Mutual Fire Insurance Company as the issuer). ACE is also not bound by the contract simply because the policy notes that Bankers Standard is an "ACE Group Company." *See Fenzel v. Grp. 2 Software, LLC*, 2016 WL 865363, at *11 (D. Md. Mar. 7, 2016) (sole owner of a corporation not a party to contract where contract lists the corporation, but not the owner, as a party); *see generally Dixon v. Process Corp.*, 38 Md. App. 644, 652–53 (1978) (corporate parents generally not liable for obligations of their subsidiaries). Because the plain language of the policy here is unambiguous, external evidence – such as the check offered to Plaintiffs – is irrelevant. *See Clendenin Bros. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459 (2006).

Based on the above, ACE is not a proper party to this lawsuit. Bankers Standard is listed as the sole issuer, and there is no evidence that ACE has accepted or adopted the contract originally made between Plaintiffs and Bankers Standard. Thus, ACE cannot be liable for the alleged breach of contract, and the court will grant Defendants summary judgment on this issue.

*b. Breach of Contract Claims*

Plaintiffs also claim Bankers Standard has breached the terms of the insurance policy by not fully compensating them for their covered losses. Plaintiffs offer several arguments in this regard, which will be explored in turn.

1. Water Damage

Plaintiffs first claim that summary judgment is inappropriate because Bankers Standard has not explained how it calculated Plaintiffs' losses. This matters in part because the policy limits payments for losses "caused by" mold to $10,000, (*see* ECF No. 32 at 7; ECF No. 29-3 at 14, 20),[1] but does not contain as restrictive a cap for other types of covered losses, such as water damage or equipment breakdown. In essence, Plaintiffs speculates that Bankers Standard reduced payouts by categorizing losses that were in fact caused by water damage or equipment breakdown as losses caused by mold and thus subject to the $10,000 limit. (ECF No. 32 at 7–9). In a slight variation, Plaintiffs also claim summary judgment is inappropriate because Bankers Standard has not explained how it calculated payouts when water and mold both damaged covered property – such as where "water damage and mold are both present in a piece of covered equipment." (*Id.* at 9).

Although Bankers Standard has not offered any explanation for how it estimated losses caused by mold, this fact alone does not preclude summary judgment. Plaintiffs do not dispute that Bankers Standard paid the maximum amount – $10,000 – required by the policy for losses caused by mold. (*See* ECF No. 32 at 7). Summary judgment may still be appropriate, then, if Defendants can show that there is no genuine issue of material fact preventing a conclusion that

---

[1] Generally, the policy does not cover "loss caused by the presence, growth, proliferation, spread, or any activity" of mold, "including the costs to test for, monitor, clean up, remove, or in any way respond to or assess the effects of" mold. (ECF No. 29-3 at 14, 28). That general exclusion notwithstanding, Bankers Standard promised to pay up to $10,000 for loss that is "caused by" mold under an "Extra Benefits" section included in the policy. (*Id.* at 14, 20).

Plaintiffs were fully compensated for all other covered losses, including water damage and equipment breakdown. If they were so compensated, then the fact that Bankers Standard did not explain how it calculated mold losses is immaterial.

With respect to losses caused by water damage, Bankers Standard contends that Plaintiffs suffered $17,830.90 in losses. To support that conclusion, it offers a document from Ace Private Risk Services – which Bankers Standard claims is its adjuster, (ECF No. 35 at 3) – detailing the "water damage" losses at Plaintiffs' residence based on an April 20, 2015 inspection, (ECF No. 35-1).[2] The document details repairs that are needed in each room due to this water damage as well as the cost of performing them, and it concludes Plaintiffs suffered $17,830.90 in water damage losses. The evidence also suggests Bankers Standard offered to pay this amount, minus a $5,000 deductible, to Plaintiffs: one part of the overall offer from Bankers Standard was a sub-payment of $12,830.90 for "water/mold damage." (ECF No. 1-3). Plaintiffs, by contrast, have offered no evidence on the extent of their own water damage losses – even though they would

---

[2] This document submitted by Defendants, like the exhibits attached to Plaintiffs' opposition brief, does not appear to be sworn or authenticated. However, the court will consider all submitted exhibits. Under Fed. R. Civ. P. 56, a party making or opposing a summary judgment motion may cite to materials in the record even if they are not in admissible form – as of 2010, the standard is whether the identified facts *could be* put in admissible form, not whether they *are* in such form when submitted. *See Ridgell v. Astrue*, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012). If the opposing party believes the cited materials cannot be put in admissible form, that party "must" file an objection. *Id.*; *Herrera v. Ilhan*, 2013 WL 3177884, at *3 (D. Md. June 21, 2013) (same). Rule 56 thus contemplates a "multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity [after an objection] for the proponent to either authenticate the document or propose a method to doing so at trial." *Ridgell*, 2012 WL 707008 at *9. Absent an objection, the court may simply consider the proffered evidence. *See Elat v. Ngoubene*, 993 F. Supp. 2d 497, 509 (D. Md. 2014) (court will consider all evidence cited by parties absent an objection); *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013) (unauthenticated exhibits attached to motion for summary judgment considered by court "as being what they purport to be" because non-movant failed to object); *see also Jones v. W. Tidewater Reg'l Jail*, 187 F. Supp. 3d 648, 654 & n.5 (E.D. Va. 2016) (considering evidence where no objection raised and materials could be authenticated); *Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 572 (6th Cir. 2014) ("Usually, when a party fails to object to evidentiary materials submitted by the opposing party in support of summary judgment, the objections are deemed forfeited or waived."); 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2722 (4th ed. 2016) ("[D]ocuments inadmissible under the evidence rules may be considered by the court if not challenged.").

bear the burden of proof with respect to the extent of their losses at trial. *See HSK v. Provident Life & Accident Ins. Co.*, 128 F. Supp. 3d 874, 882 (D. Md. 2015) ("Generally, the burden of proving entitlement to insurance benefits lies with the insured." (applying Maryland Law)).

By putting forth evidence showing Plaintiffs only suffered $17,830.90 in water damage losses, Banker Standard made a prima facie case that it was entitled to summary judgment on this issue and discharged its initial burden of production under Fed. R. Civ. P. 56. *See Celotex*, 477 U.S. at 323–24, 330–31 (discussing burden-shifting framework under Rule 56); *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 355–56 (D. Md. 2004) (same). To defeat summary judgment, Plaintiffs were thus obliged to come forward with specific facts showing a genuine dispute for trial. *See Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(c)(1). Because Plaintiffs failed to present any evidence on the extent of the water damage they suffered, Bankers Standard is entitled to summary judgment on this issue. *See Celotex*, 477 U.S. at 322–23 (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

The court recognizes that the document detailing specific water damage losses was attached to Defendants' reply brief but was not filed with the motion for summary judgment. The court also recognizes that it generally should not consider "new evidence" presented by a summary judgment movant in its reply brief to which the non-movant has had no opportunity to respond. *See, e.g., Ilozor v. Hampton Univ.*, 2007 WL 1310179, at *13–14 (E.D. Va. May 3, 2007); *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1456–57 (E.D. Wis. 1993); *see also Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The

ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."). But evidence attached to a reply brief is not "new" if it responds to issues and facts raised in the non-movant's opposition brief. *See Allen v. Enabling Techs. Corp.*, 2016 WL 4240074, at *4 (D. Md. Aug. 11, 2016); *Bocock v. Specialized Youth Servs. of Virginia, Inc.*, 2015 WL 6738331, at *4 (W.D. Va. Nov. 4, 2015). Here, the exhibit in question responds directly to Plaintiff's claim that summary judgment is inappropriate because Bankers Standard failed to detail which losses were attributable to water damage rather than mold. (ECF No. 32 at 7). The court will thus consider it – especially because Plaintiffs have neither objected to its consideration nor requested leave to file a surreply. *See Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994) (district court did not abuse its discretion by considering legal argument raised for the first time in a reply brief where non-moving party did not seek leave to submit any further briefing or evidence in opposition).[3]

In sum, the court will grant Bankers Standard summary judgment on the issue of whether it has fully compensated Plaintiffs for losses caused by water damage.

2. Equipment Breakdown

Plaintiffs and Defendant also disagree over whether Plaintiffs are entitled to any compensation under the so-called equipment breakdown provisions of the policy. The base policy excludes from coverage "any loss caused by breakdown, including mechanical breakdown." (ECF No. 29-3 at 28). But Plaintiffs added "Equipment Breakdown Coverage" to

---

[3] The court could, on its own initiative, order Plaintiffs to file a surreply, *see* Local Rule 105.2 (D. Md. 2016), but it will not do so here. Surreplies are generally disfavored in this District, *see Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013), and are not necessary if the evidence raised is not "new," *see EEOC v. Freeman*, 961 F. Supp. 2d 783, 801–02 (D. Md. 2013), aff'd in part sub nom. *E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015) ("None of the arguments or evidence introduced in Defendant's reply brief can truly be considered 'new,' such that the [plaintiff] should be afforded another opportunity to address them.").

their policy as an "optional coverage," thereby reinstating coverage that would have otherwise been excluded if the base policy had remained unaltered. (*See* ECF No. 29-3 at 4, 89–92).[4]

Plaintiffs claim the HVAC system was "faulty," (ECF No. 32 at 3), and suggest that, under the equipment breakdown provisions, Bankers Standard must pay to repair or replace it. (*See* ECF No. 1 at 6; ECF No. 32 at 9). They also claim that water that leaked from the HVAC system caused water damage elsewhere in the residence and that these losses are also covered under the equipment breakdown provisions. (*See* ECF No. 32 at 2–3, 8; ECF No. 1 at 5). Bankers Standard, by contrast, suggests the equipment breakdown provisions do not apply, for two reasons. First, it notes that, by its terms, equipment breakdown coverage does not apply to damage "directly caused by, contributed to by, resulting from or arising out of" several other "causes of loss," one of which is "water damage." (*See* ECF No. 35 at 6; ECF No. 29-3 at 89). Bankers Standard thus suggests the equipment breakdown provisions do not apply because the HVAC system itself suffered water damage. Alternatively, Bankers Standard claims coverage is barred by separate policy provisions excluding coverage for equipment that is improperly designed or constructed. (*See* ECF No. 35 at 6).

To support its position, Bankers Standard submitted evidence showing the HVAC system suffered water damage. (*See* ECF No. 29-6 at 3) (evaporator coil is "covered with rust indicating water has been collecting in it for a long time," and mold residue on equipment was "possibly caused from standing water in the evaporator."); (ECF No. 29-7 at 6) ("Water damage was noticed . . . within the HVAC system."). It also submitted evidence showing that the

---

[4] Defendants nonetheless claim that coverage under the equipment breakdown provisions is precluded by the breakdown exclusion contained in the base insurance policy. (ECF No. 35 at 6–7). But the optional equipment breakdown provisions state explicitly that, in light of the optional coverage added by Plaintiffs, the base policy exclusion "does not apply to the extent coverage is provided by" the optional coverage. Thus, the court focuses its analysis on the optional coverage, not the original exclusion.

residence had a leaky roof, (*see* ECF No. 29-6 at 2; ECF No. 29-4 at 2), that caused water damage inside the residence, (ECF No. 29-6 at 2), including within the HVAC system itself, (*see* ECF No. 29-7 at 6) (residence "was subject to a roof leak that impacted the HVAC systems of the attic"). Plaintiffs do not appear to contest that the HVAC system suffered extensive water damage. (*See* ECF No. 32 at 2) ("The HVAC units were damaged and full of rust."). Instead, they claim that both water and mold have damaged the HVAC units, and that summary judgment is inappropriate partly because Bankers Standard did not explain how it calculated losses in light of these twin causes of loss. (*See* ECF No. 32 at 9) (suggesting "water damage and mold" were both present in HVAC units and claiming "a genuine issue of material fact where water <u>and</u> mold both damage insured property").

The equipment breakdown coverage does not apply if "water damage" at least "contributed to" damage suffered by the HVAC system. Absent an indication the parties intended to use words in a special sense, insurance policy terms are accorded their "usual, ordinary, and accepted meaning," *Bausch & Lomb*, 330 Md. at 779, and clear and unambiguous language "must be enforced as written," *Catalina*, 67 F.3d at 65. Although the term "water damage" is not defined in the policy, this court concludes that an HVAC system that has standing water inside its units and is "full of rust" has suffered "water damage" under the "usual, ordinary, and accepted meaning" of that term. The evidence also indicates that water damage at least "contributed to" the need to repair or replace the HVAC system. Plaintiffs do not appear to contest that point and do not offer any evidence suggesting that the HVAC system would need to be replaced even if it had not suffered water damage.

Accordingly, the equipment breakdown provisions are inapplicable here, and the court

will grant summary judgment to Bankers Standard on this issue.[5]

### 3. Additional Living Expenses

Plaintiffs also claim they were not fully compensated for "additional living expenses," meaning extra housing costs incurred after Plaintiffs were forced to move out of their residence because it had become uninhabitable. (ECF No. 32 at 10). The parties agree that additional living expenses incurred because of the presence of mold in the residence are capped at $2,000 and that Bankers Standard has offered to pay this amount to Plaintiffs. (*See id.*; ECF No. 29-1 at 3). The issue is whether Plaintiffs moved out solely because of mold, or if other covered losses – such as water damage – also made the residence uninhabitable. If Plaintiffs would have had to move out anyway, even absent the presence of mold, they may be entitled to more than $2,000 in additional living expenses. (*See* ECF No. 29-3 at 18) (detailing "Loss of Use" provisions).

Plaintiffs suggest that many reasons compelled them to move out, including mold, water damage, equipment breakdown, and the presence of "chemicals and toxins in the home." (ECF No. 32 at 10). Summary judgment is inappropriate, they claim, because Bankers Standard "presented no evidence that the Kurlands had to move solely because of mold damage" and "[t]he Policy should not be read to mean that, if mold enters the equation, then additional living expenses that would otherwise be covered are suddenly severely restricted." (*Id.*). Bankers Standard, for its part, did not address this issue in its reply brief. And neither side has offered any evidence concerning why Plaintiffs moved out in April 2015.

Faced with this lack of evidence, summary judgment on this issue rises and falls with the burden of production. To prevail on summary judgment, Bankers Standard must discharge its

---

[5] Accordingly, the court need not delve into Defendant's other argument: namely, that coverage under the equipment breakdown provisions is also precluded because the HVAC design or construction was faulty.

initial burden of production. *See Celotex*, 477 U.S. at 323. Because Plaintiffs would ultimately bear the burden of proof on whether they were entitled to greater payouts at trial for additional living expenses, *see HSK*, 128 F. Supp. 3d at 882, Bankers Standard may discharge its initial burden of production here in one of two ways. First, it can "show" – meaning "point out" to the court – that there is an absence of evidence to support the Plaintiffs' case. *See Celotex*, 477 U.S. at 323; *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F. 3d 390, 394 (4th Cir. 1994). Alternatively, it may discharge its burden by offering evidence that, if undisputed, would entitle it to summary judgment on this issue. *See 7-Eleven, Inc.*, 300 F. Supp. 2d at 355–56.

Bankers Standard has done neither. Accordingly, it has not discharged its initial burden of production, and this court will deny summary judgment on this issue of whether Plaintiffs have been fully compensated for additional living expenses.

4. Personal Property

The two sides also disagree as to whether the $10,000 mold limit applies to personal property inside the residence that is damaged by mold. Plaintiffs claim the cap does not apply to personal property because the mold provisions in the policy "do not say anything about limiting coverage for mold that infests items of personal property." (ECF No. 32 at 11). In light of this silence, Plaintiffs conclude the $10,000 cap "applies to the house" but "does not apply . . . to items of personal property that have been affected by covered water damage, and which must be replaced because of mold." (*Id.*). Bankers Standard, by contrast, claims that mold damage to personal items counts against the cap. It notes that, with respect to mold losses, Bankers Standard only agreed to pay up to $10,000 to remove mold from "covered property" – and both the residence and personal items inside are "covered property" under the policy. Alternatively,

Bankers Standard claims the Dampness or Extreme Temperatures exclusion would bar any claim for personal property losses that Plaintiffs assert. (ECF No. 35 at 7–9).

According to the plain language of the policy, "covered property" includes both the dwelling on the insured premises and "personal property" owned or used by an insured person. (ECF No. 29-3 at 16). There is no indication that the parties meant to alter this understanding of the breadth of "covered property" with respect to the mold provisions. Because Plaintiffs have received the full $10,000 that they are entitled to recover under the mold provisions, they have no claim for greater recovery for mold damage to personal property. Accordingly, summary judgment in favor of Bankers Standard is appropriate on this issue.

5. Breakdown of Payments

Finally, Plaintiffs claim summary judgment is inappropriate because it is not clear that the three sub-payments offered by Bankers Standard ($10,000, $2,000, and $12,830.90) were actually offered for the reasons that Bankers Standard now suggests. Put differently, Plaintiffs claim that Bankers Standard has not shown that it "actually paid these amounts for the purposes they say in their Motion." (ECF No. 32, at 10 n.2). Bankers Standard rejects this argument. It notes that the document attached to its reply brief details how Bankers Standard arrived at the $12,830.90 amount for water damage pursuant to an April 20, 2015, inspection of the residence. It also claims the $10,000 and $2,000 payments were clearly for losses due to mold and mold-related additional living expenses. (ECF No. 35 at 2–3).

Plaintiffs' argument is unconvincing. The document accompanying the check sent to Plaintiffs at least clarified that the three sub-payments indisputably related to water and mold damage. (ECF No. 1-3). Although it did not clarify the nature of the payments further, the

explanations from Bankers Standard are fully consistent with available evidence. More to the point, it is not clear why this matters. The central dispute here is whether Bankers Standard is entitled to summary judgment on its contention that it has fully compensated Plaintiffs for all covered losses. Any dispute over whether these payment amounts were intended for the purposes now asserted by Bankers Standard is not only speculative but is also not a "genuine dispute" that would preclude summary judgment.

## IV. CONCLUSION

In sum, the court concludes that Bankers Standard is entitled to summary judgment on the issue of whether Plaintiffs have been fully compensated under the policy provisions pertaining to water damage, equipment breakdown, and personal property. However, it will deny summary judgment with respect to whether Plaintiffs have been fully compensated for additional living expenses incurred after they permanently vacated their residence.

For the aforementioned reasons, Defendants' motion for summary judgment will be granted in part and denied in part. A separate order follows.

Jan. 23, 2017
Date

James K. Bredar
United States District Judge